In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-3861, 99-3917 and 99-3922

Jose A. Bazan-Reyes, Wincenty Z. Maciasowicz,
and Arnoldo Gomez-Vela,

Petitioners-Appellants,

v.

Immigration and Naturalization
Service and John D. Ashcroft,

Respondents-Appellees.

Petitions for Review of an Order of the
Board of Immigration Appeals.
Nos. A90 614 059, A44 224 586, A31 164 151

Argued November 9, 2000--Decided July 5, 2001


   Before Flaum, Chief Judge, and Ripple and
Kanne, Circuit Judges.

   Kanne, Circuit Judge.   Petitioners Jose
A. Bazan-Reyes, Wincenty Z. Maciasowicz,
and Arnoldo Gomez-Vela seek review of
decisions by the Immigration and
Naturalization Service ("INS") and the
Board of Immigration Appeals ("BIA")
finding them removable as a result of
state drunk driving offenses. These cases
were consolidated for the purposes of
appeal because they all raise the same
issue: are petitioners' state drunk
driving convictions aggravated felonies
as defined by the Immigration and
Naturalization Act ("INA")? See 8 U.S.C.
sec. 1101(43). Petitioners argue that the
INS (in the case of Bazan-Reyes) and the
BIA (in the case of Maciasowicz and
Gomez-Vela) incorrectly determined that
they were removable because driving while
intoxicated is a crime of violence, and
thus an aggravated felony. See id.; 18
U.S.C. sec. 16. Because we conclude that
the INS and the BIA erred in finding that
petitioners' state convictions are crimes
of violence, we vacate the deportation
orders of Bazan-Reyes, Maciasowicz, and
Gomez-Vela and remand for proceedings
consistent with this opinion.

I.  History

Bazan-Reyes, Maciasowicz, and Gomez-Vela appeal from decisions of either the INS (in the case of Bazan-Reyes) or the BIA (in the case of Maciasowicz and Gomez-Vela) finding them removable. We will briefly discuss the background of each petitioner's appeal.

A.   Bazan-Reyes

Bazan-Reyes, a citizen of Mexico, entered the United States without inspection in 1972. He applied for temporary resident alien status in 1988, but his application was denied because he did not submit information about his criminal record, which up to that point included four convictions for driving while intoxicated ("DWI"). Subsequently, on October 5, 1988, Bazan-Reyes was paroled into the United States. Eleven years later, in April 1999, Bazan-Reyes pleaded guilty to a Class D felony, Operating a Vehicle While Intoxicated, in violation of section 9-30-5-3 of the Indiana Code./1 As a result, he was sentenced to three years imprisonment. In June 1999, the INS commenced expedited removal proceedings against Bazan-Reyes pursuant to INA section 238. See 8 U.S.C. sec. 1228(b)(2). The INS issued a notice of intent to issue a final removal order, charging Bazan-Reyes with removability based on his April 1999 felony conviction for DWI. In the notice of intent, the INS alleged that Bazan-Reyes was guilty of an aggravated felony and removable on that basis. In October 1999, the INS issued a final administrative order finding Bazan-Reyes removable.

B.   Maciasowicz

Maciasowicz, a citizen of Poland, was admitted to the United States as a lawful permanent resident in December 1993. In February 1998, he pleaded guilty to two counts of homicide by intoxicated use of a vehicle under Wisconsin Statute Section 940.09./2 He was sentenced to consecutive terms of five years on the first count and ten years on the second count; however, the sentence on the second count was withheld and probation ordered. In February 1999, the INS issued Maciasowicz a Notice to Appear ("NTA") charging him with removability pursuant to 8 U.S.C. sec. 1227 (a) (2)(A)(iii) based on his conviction for homicide by intoxicated use of a vehicle. At the

hearing, the Immigration Judge ("IJ") found that homicide by intoxicated use of a vehicle under Wisconsin Statute Section 940.09 is an aggravated felony and ordered Maciasowicz removed on that basis. Maciasowicz appealed to the BIA, but his appeal was dismissed on October 12, 1999. The BIA found that the IJ correctly determined that Maciasowicz was deportable under 8 U.S.C. sec. 1227 because he had been convicted of a crime of violence.

C.   Gomez-Vela

   Gomez-Vela, a citizen of Mexico, was admitted to the United States as a lawful permanent resident in November 1971. In June 1997, Gomez-Vela was arrested for driving under the influence ("DUI"). Because he had two previous drunk driving convictions, he was charged with aggravated driving under the influence. See 625 Ill. Comp. Stat. 5/11-501(d)(1) (1997)./3 Gomez-Vela pleaded guilty and was sentenced to twenty-six months in prison. The INS commenced removal proceedings against Gomez-Vela on March 2, 1999 by issuing a NTA. The NTA alleged that Gomez-Vela was removable because he was guilty of an aggravated felony under 8 U.S.C. sec. 1101(a)(43)(F). At his hearing before the IJ, Gomez-Vela admitted that he had been convicted for aggravated driving under the influence and sentenced to twenty-six months imprisonment. The IJ found that aggravated driving under the influence is a crime of violence as defined in 18 U.S.C. sec. 16(b), and therefore is an aggravated felony. On that basis, the IJ ordered Gomez-Vela removed. Gomez-Vela appealed the IJ's determination that he was guilty of an aggravated felony to the BIA, but the BIA dismissed his appeal on October 22, 1999.

   Petitioners Bazan-Reyes, Maciasowicz, and Gomez-Vela all filed timely petitions for review of the INS and BIA decisions finding them removable. On appeal, petitioners argue that the INS and the BIA erred in their determination that Bazan-Reyes and Gomez-Vela's prior convictions for DWI and Maciasowicz's conviction for homicide by intoxicated use of a vehicle are aggravated felonies rendering them removable under 8 U.S.C. sec.1227(a)(2)(A)(iii).

II.  Analysis

A.  Jurisdiction

   The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), limits our review of orders of removal. Under 8 U.S.C. sec. 1252(a)(2)(C), as amended by the IIRIRA, "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)." Nevertheless, the government concedes that we retain jurisdiction in order to determine jurisdiction and may thus review the threshold issue of whether petitioners' convictions for driving while intoxicated are indeed aggravated felonies as defined by 8 U.S.C. sec. 1227 (a)(2)(A)(iii). See Solorzano-Patlan v. INS, 207 F.3d 869, 872 (7th Cir. 2000); Xiong v. INS, 173 F.3d 601, 604 (7th Cir. 1999). Here, the jurisdictional question and the merits collapse into one because the issue of whether petitioners' convictions were aggravated felonies also provides the basis for their challenges to removal. See Guerrero-Perez v. INS, 242 F.3d 727, 729-30 (7th Cir. 2001). Thus, we must decide whether the state drunk driving convictions of Bazan-Reyes, Maciasowicz, and Gomez-Vela/4 can be considered aggravated felonies under 8 U.S.C. sec. 1101(a)(43).

B.  Was Bazan-Reyes Properly Placed in Expedited Removal Proceedings?

   Before turning to the question of whether petitioners have committed aggravated felonies, we must first address Bazan-Reyes' claim that the INS lacked subject matter jurisdiction to issue a final order of removal against him because he was improperly placed into expedited removal proceedings under section 238 of the INA, 8 U.S.C. sec. 1228. Unlike petitioners Maciasowicz and Gomez-Vela, Bazan-Reyes was not a lawful permanent resident at the time the INS commenced deportation proceedings against him because he was paroled rather than admitted to the country. Therefore, the INS placed Bazan-Reyes in expedited removal proceedings pursuant to 8 U.S.C.

sec. 1228. Section 1228(b) allows the Attorney General to issue an order of removal for a non-permanent resident alien if the alien is deportable under 8 U.S.C. sec. 1227(a)(2)(A)(iii), i.e., if the alien has committed an aggravated felony. Bazan-Reyes claims that he is not deportable under 8 U.S.C. sec. 1227(a)(2)(A)(iii) because the language of that provision forbids its application to parolees.

Bazan-Reyes' argument that parolees may not be placed in expedited removal proceedings is based on the introductory paragraph to 8 U.S.C. sec. 1227(a) which provides: "Any alien . . . in and admitted to the United States shall . . . be removed if the alien is within one or more of the following classes of deportable aliens." Bazan-Reyes argues that, since he has not been admitted to this country, he does not fall under 8 U.S.C. sec. 1227, and thus may not be placed in expedited proceedings. We disagree. Section 1228(b) of Title 8 of the United States Code, entitled "Removal of aliens who are not permanent residents," allows the Attorney General to utilize expedited proceedings to remove certain aliens who are not lawful permanent residents, including those who have been convicted of aggravated felonies. Nothing in that section prohibits its application to parolees, and, as the government points out, construing the statute to forbid its application to parolees would provide more favorable treatment for parolees than for lawfully admitted aliens. We cannot believe that Congress intended such a result. We find it more plausible that the reference to sec. 1227(a)(2)(A)(iii) simply operates to incorporate the definition of aggravated felony set out in that section to elucidate which non-lawful resident aliens may be placed in expedited proceedings. Therefore, we reject Bazan-Reyes' argument that he was improperly placed in removal proceedings and will consider whether his prior conviction--as well as the prior convictions of petitioners Maciasowicz and Gomez-Vela-- was properly found to be an aggravated felony.

C.  Is Driving While Intoxicated an Aggravated Felony?

## 1. Statutory Framework

Section 237(a)(2)(A)(iii) of the INA provides that "[a]ny alien who is convicted of an aggravated felony . . . is deportable." 8 U.S.C. sec. 1227(a)(2)(A)(iii). Petitioners dispute neither the fact of their convictions nor their alien status. Therefore, the only remaining issue in these consolidated appeals is whether the petitioners' convictions may be deemed aggravated felonies under 8 U.S.C. sec. 1227(a)(2)(A)(iii). Although we review de novo the determinations by the INS and the BIA that petitioners are removable because they committed aggravated felonies, see Xiong v. INS, 173 F.3d 601, 605 (7th Cir. 1999), the BIA's interpretation of the statute it administers is entitled to deference. See Guerrero-Perez, 242 F.3d 727, 730 (7th Cir. 2001).

The INA provides that the term "aggravated felony" includes, inter alia, "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. sec. 1101(a)(43)(F)./5 All of the petitioners were sentenced to a year or more of imprisonment. Thus, in order to determine whether Bazan-Reyes, Maciasowicz, and Gomez-Vela were properly found to have committed aggravated felonies, we must determine whether their state convictions for driving while intoxicated are crimes of violence as defined in 18 U.S.C. sec. 16. See Solorzano-Patlan v. INS, 207 F.3d 869, 875 (7th Cir. 2000).

## 2. Categorical Approach

In order to determine whether Congress intended the term "crime of violence" as defined in 18 U.S.C. sec. 16 to encompass conduct prohibited under a specific state statute, we generally employ a categorical approach. See Lara-Ruiz v. INS, 241 F.3d 934, 941 (7th Cir. 2001). In other words, we ask only whether the generic elements of the statute under which the alien was convicted together with the indictment constitute a crime of violence. See id. In using such an approach, however, we will not categorize all conduct covered by a statute as crime of violence conduct if the statute covers both conduct that constitutes a crime of

violence and conduct that does not. See Xiong v. INS, 173 F.3d 601, 605 (7th Cir. 1999). We will look past the charging documents to the aliens' specific conduct if "'it [i]s otherwise impossible to determine the proper classification of the offense'" and such an inquiry would not require evidentiary hearings into disputed issues of fact. Id. (quoting United States v. Shannon, 110 F.3d 382, 384 (7th Cir. 1997)); see also Taylor v. United States, 495 U.S. 575, 602, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990) (determining that an offense constitutes burglary under the Armed Career Criminal Act, 18 U.S.C. sec. 924(e), if either the statutory definition or the charging papers and jury instructions actually required the jury to find all of the elements of burglary).

3. Do Petitioners' Convictions Qualify as Crimes of Violence Under 18 U.S.C. sec. 16?

As is evident from the case at hand, the BIA has interpreted the definition of crime of violence set out in sec. 16 to include crimes of recklessness--such as drunk driving--that pose a substantial risk that one object will exert a force upon another. See In re Puente, Interim Decision 3412, 1999 WL 770709 (BIA 1999); In re Magallanes, Interim Decision 3341, 1998 WL 133301 (BIA 1998); Matter of Alcantar, 20 I. & N. Dec. 801, 814 (BIA 1994); see also In re Sweetser, Interim Decision 3390, 1999 WL 311950 (BIA 1999) (finding that petitioner's conviction for criminally negligent child abuse was not a crime of violence because "although a parent who negligently leaves a young child unattended near a body of water may risk serious 'injury' to the child, there is no risk that 'force' will be used in the commission of the offense"). According to the BIA, the term crime of violence as articulated in sec. 16(b) is not limited to crimes of specific intent, but also includes offenses that involve reckless (and possibly negligent) behavior. Petitioners challenge this interpretation; they argue that sec. 16(a) requires intentional force and that sec. 16(b) requires a substantial risk of intentional force. Because the offenses of which they were convicted do not normally involve intentional force or a substantial risk of intentional force, petitioners claim that they are not guilty of crimes of violence and are

therefore not removable.

The circuits are split on the issue of whether a prior conviction for DWI is a crime of violence under sec. 16. Compare United States v. Chapa Garza, 243 F.3d 921, 927 (5th Cir. 2001) (holding that sec. 16(b) requires recklessness with respect to the risk that intentional force may be used in the course of committing the offense), and United States v. Parson, 955 F.2d 858, 866 (3d Cir. 1999) (suggesting, in dicta, that DWI is not a crime of violence because sec. 16(b) requires a willingness to risk having to commit a crime of specific intent), with Park v. INS, No. 97-71373, 2001 WL 604223 (9th Cir. June 5, 2001) (holding that a reckless mens rea is sufficient to constitute a crime of violence under sec. 16(a) and sec. 16(b)), Tapia Garcia v. INS, 237 F.3d 1216, 1222-23 (10th Cir. 2001) (relying on sentencing guidelines cases interpreting the term crime of violence to uphold the BIA's determination that drunk driving is a crime of violence under sec. 16(b)), and Le v. U.S. Attorney Gen., 196 F.3d 1352, 1354 (11th Cir. 1999) (holding that petitioner's conviction for causing serious bodily injury while driving under the influence satisfies the definition of a "crime of violence" under 18 U.S.C. sec. 16(a) because one element of the offense includes the actual use of physical force).

We have never directly addressed the issue of whether drunk driving is a crime of violence for the purposes of sec. 16. In United States v. Rutherford, 54 F.3d 370 (7th Cir. 1995), however, we examined the related issue of whether a conviction for causing serious bodily injury while driving under the influence/6 qualified as a crime of violence for the pur-poses of section 4B1.2(1) of the United States Sentencing Guidelines (U.S.S.G)./7 Id. In Rutherford, the defendant argued on appeal that the district court impermissibly enhanced his sentence as a career criminal because the court erred in finding that his prior conviction qualified as a crime of violence under section 4B1.2(1). See id. at 371-73. He argued that both prongs of section 4B1.2(1) require willful--not reckless-- conduct, and that the sentencing court therefore erred in finding that he had

committed a crime of violence because drunk driving does not involve specific intent. See id. at 372. We accepted the defendant's argument with respect to the first prong, section 4B1.2(1)(i), but not with respect to the second prong, section 4B1.2(1)(ii). See id. at 373-76.

Although both parties agree that our decision in Rutherford is central to the issue at hand, they vigorously dispute its proper application. Because our analysis depends in part on a comparison of the language defining the term crime of violence in sec. 16(b) with the language of section 4B1.2(1) of the sentencing guidelines, we set out the language of both provisions here. Crime of violence is defined by section 16 of Title 18 of the United States Code to include the following:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. sec. 16.  Section 4B1.2(1) of the sentencing guidelines provides that:

(1) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

(i) has an element the use, attempted use, or threatened use of physical force against the person of another, or

(ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. sec. 4B1.2(1). Initially, these two provisions were identical because the guidelines defined crime of violence by simply incorporating the definition found in sec. 16(b). See U.S. Sentencing Guidelines Manual, app. C at 106-07 (1991). This changed in 1989, however, when the Sentencing Commission adopted the

definition of crime of violence now found in section 4B1.2(1). See id. A side-by-side comparison of the current provisions reveals that the language of the first prongs of both definitions is nearly identical while the language of the second prong of the 4B1.2(1) is distinct from the second prong of sec. 16.

In Rutherford, we found that the term "use of physical force" in U.S.S.G. section 4B1.2(1)(i) implies "an intentional act rather than the mere application or exertion of force." Rutherford, 54 F.3d at 372-73. But see id. at 378 (Easterbrook, J., concurring) (arguing that section 4B1.2(1)(i) does not require intent to use force because the word "use" refers not to mens rea of the actor, but rather to the actus reus). Our finding was based on the dictionary definition as well as the common understanding of the word "use". See id. at 372. In making this determination, we noted the following:

Force is exerted in many instances where it is not employed for any particular purpose. For example, earthquakes and avalanches involve the exertion of a tremendous amount of force. . . . Referring to a randomly occurring avalanche as a "use" of force would torture the English language . . . . A drunk driver who injures a pedestrian would not describe the incident by saying he "used" his car to hurt someone. In ordinary English, the word "use" implies intentional availment. No availment of force in order to achieve an end is present in a drunk driving accident.

Id. at 372-73.

We did, however, find that specific intent to use force was not required under the second prong of U.S.S.G. section 4B1.2(1). See id. at 376. Section 4B1.2(1)(ii), in addition to naming specific crimes such as burglary and arson, also provides that an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another" is considered a crime of violence. In rejecting defendant's argument that the Sentencing Commission intended this section to include only intentional conduct, we found that section 4B1.2(1)(ii) does not contain any indication that specific intent is

required. Rutherford, 54 F.3d at 374. Instead, we found that section 4B1.2(1)(ii) encompasses reckless conduct that presents a serious risk of injury. See id. Our determination that section 4B1.2(1)(i) requires intent while section 4B1.2(1)(ii) does not was partially based on our concern that a contrary interpretation would conflate the two prongs of section 4B1.2(1), thereby making the second prong redundant. See id. ("[W]e are persuaded that the Commission intended subsections (i) and (ii) to complement rather than compete with each other."). Applying our finding that the second prong of the guideline does not require intentional force, we thus found that drunk driving does constitute a crime of violence under section 4B1.2(1)(ii) because the "risk of injury from drunk driving is neither conjectural nor speculative." Id. at 376.

Turning to the issue at hand, we must now decide the impact of our holding in Rutherford on the question of whether drunk driving is a crime of violence under 18 U.S.C. sec. 16. The application to the first prong of sec. 16 is clear because the language of sec. 16(a) is nearly identical to the language of U.S.S.G. section 4B1.2(1)(i). Therefore, our finding that the word "use" requires volitional conduct prohibits a finding that drunk driving is a crime of violence under sec. 16(a). The government concedes that Bazan-Reyes' and Gomez-Vela's felony DWI convictions are not crimes of violence under sec. 16(a), but maintains that Maciasowicz's conviction for homicide by intoxicated use of a vehicle is a crime of violence under sec. 16(a) because homicide by the intoxicated use of a vehicle has the use of force against a person as an element. We disagree. Although a conviction for homicide by intoxicated use of a vehicle requires that the offender actually hit someone, it does not require that he intentionally used force to achieve that result. Like Maciasowicz, the defendant in Rutherford was convicted of an offense that included causing injury to another person while under the influence of alcohol. Therefore, application of sec.16(a) to Maciasowicz's conviction is foreclosed by our determination in Rutherford that section 4B1.2(1)(i) did not apply to the defendant's conviction

Notwithstanding the proper application of sec. 16(a), the government maintains that all three petitioners are guilty of crimes of violence under sec. 16(b). The government asserts that our holding in Rutherford requires a finding that drunk driving is a crime of violence under sec. 16(b) because the language of sec. 16(b) is substantially similar to the language of U.S.S.G. section 4B1.2(1)(ii) and the second prong of sec. 16(b) is aimed at the same type of risky or reckless behavior that is targeted by section 4B1.2(1)(ii). In support of this argument, the government also points out that the Sentencing Commission, in amending the original section 4B1.2(1), noted that the amendment was not intended to change the substance of the guideline, but only to clarify the language.

We are not convinced by the government's argument that the two provisions should be interpreted in the same way simply because the Sentencing Commission, in amending section 4B1.2(1), specifically noted that the amendment was not intended to change the substance of the guideline, but only to clarify its meaning. See U.S. Sentencing Guidelines Manual app. C at 106-07 (1991). Our task at hand is to interpret sec. 16(b), not the guideline; therefore the evolution of the guideline does not control our discussion. Moreover, while it is true that, in amending U.S.S.G. section 4B1.2(1), the Commission stated its desire to clarify the definition of 18 U.S.C. sec. 16(b) rather than change its substance, see id., the relevant inquiry is not whether the amendment was intended to change the guideline, but whether it actually did. On that point, we agree with the conclusion of United States v. Parson, 955 F.2d 858 (3d Cir. 1999), that the 1989 amendment to section 4B1.2(1) changed, and in fact expanded, the coverage of section 4B1.2(1)(ii). See id. at 866. "Whatever the amendment's purpose, what it did was scrap the earlier cross-reference to 18 U.S.C. sec. 16 and replace it with a significantly different definition based on 18 U.S.C. sec. 924(e)." Id., at n.10. (citing U.S. Guidelines Manual app. C at 110-111).

The government urges us to follow the Tenth and Eleventh Circuits and find that drunk driving is a crime of violence. By arguing that sec. 16(b) covers all felonies that involve a substantial risk

of one object exerting force upon another, the government asks us to interpret the language of sec. 16(b) as if it were equivalent to the language of U.S.S.G. section 4B1.2(1)(ii). If we were to oblige, almost any felony offense that involves a substantial risk of physical harm--accidental or otherwise--would be a crime of violence under sec. 16(b) because physical harm is nearly always the result of some type of physical force. Such an interpretation would include many offenses that are not generally thought of as violent crimes. For example, a felony conviction for involuntary manslaughter that was the result of speeding would become a crime of violence. While it is, of course, possible that Congress intended sec. 16(b) to reach conduct that is normally not considered violent (as the Sentencing Commission did in crafting section 4B1.2 (1)(ii)), we will not make such a finding unless this interpretation is supported by the plain language of the statute.

Contrary to the government's assertion that the language of U.S.S.G. section 4B1.2(1)(ii) and sec. 16(b) are substantially similar, a side-by-side comparison reveals significant differences between the language of the two provisions. While this fact alone does not mandate that the two provisions be interpreted differently, it certainly requires us to carefully scrutinize the language of the two statutes before finding that the two provisions should be interpreted in the same manner. In United States v. Chapa Garza, 243 F.3d 921 (5th Cir. 2001), the Fifth Circuit rejected the government's contention that sec. 16(b) should be interpreted in the same manner as section 4B1.2(1)(ii) and concluded that felony DWI is not a crime of violence under sec. 16(b). Id. at 927. The court found that the two provisions should not be interpreted to mean the same thing because the language of section 4B1.2 (1)(b) is substantially broader than that of sec. 16(b):

Guideline 4B1.2(a)(2)'s otherwise clause concerns only the risk of one particular effect (physical injury to another's person or property) of the defendant's conduct. Section 16(b) is focused on the defendant's conduct itself, as there is no requirement that there be a substantial risk that another's person or

property will sustain injury, but only that there be a substantial risk that the defendant will use physical force against another's person or property in the course of committing the offense.

Id. at 925. Therefore, the Fifth Circuit found that sec. 16(b) applies only "when the nature of the offense is such that there is a substantial likelihood that the perpetrator will intentionally employ physical force against another's person or property in the commission thereof." Id. at 924. Similarly, in considering the issue of whether sec. 16(b) requires intent, the Third Circuit contrasted the language of section 4B1.2(1)(ii) with sec. 16(b):

At first blush, the difference in phrasing appears trivial because most physical injury comes from the use of physical force. But the distinction is significant. Use of physical force is an intentional act, and therefore the first prong of both definitions require specific intent to use force. As to the second prong of [sec. 16], a defendant's commission of a crime that, by its nature, is likely to require force similarly suggests a willingness to risk having to commit a crime of specific intent. For example, a burglar of a dwelling risks having to use force if the occupants are home and hear the burglar. In such a case, the burglar has a mens rea legally nearly as bad as a specific intent to use force, for he or she recklessly risks having to commit a specific intent crime.

In contrast, under the second prong of [section 4B1.2 (1)(ii)], criminals whose actions merely risk causing physical injury may have a lower mens rea of "pure" recklessness.

Parson, 955 F.2d at 866.

We are in agreement with the Third and Fifth Circuits that the phrase "may be used in the course of committing the offense" counsels against interpreting sec. 16(b) to be equivalent to section 4B1.2(1)(ii). Our determination in Rutherford that the word "use" implies intentional availment requires that the words "may be used" in sec. 16(b) also contain an intent requirement. Thus, the physical force that "may be used in the

course of committing the offense" must be accompanied by intent to use that force. Additionally, the fact that the petitioners did employ intentional force at some point, in opening the car door or pressing the accelerator for example, does not constitute the use of physical force as required by the statute. In Solorzano-Patlan v. INS, 207 F.3d 869 (7th Cir. 2000), we found that the term "physical force" in 18 U.S.C. sec. 16(b) refers to actual violent force. See id. at 875. In finding that the statute at issue encompassed both conduct that involved the use of physical force and conduct that did not, we noted that "the force necessary to trigger [18 U.S.C. sec. 16(b)] is more than merely opening a car door. We are of the opinion that the force necessary to constitute a crime of violence, must actually be violent." Id. at 875 n.10; see also Sareang Ye v. INS, 214 F.3d 1128, 1134 (9th Cir. 2000) (holding that vehicle burglary is not a crime of violence under sec. 16(b) because "entry into a locked vehicle is not essentially 'violent in nature'" because a person can commit vehicle burglary in numerous ways short of using violent physical force); United States v. Rodriquez-Guzman, 56 F.3d 18, 20 n.8 (5th Cir. 1995) (finding that the word "force" in sec. 16(b) refers to destructive or violent force). Finally, the fact that the statute requires the physical force to be used "in the course of committing the offense" also supports the conclusion that the force that "may be used" refers to intentional force. Chapa-Garza, 243 F.3d at 927.

The combination of the phrases "physical force," "may be used," and "in the course of committing the offense" in sec. 16(b) (and their corresponding absence from section 4B1.2 (1)(ii)) is a material difference between the two definitions-- one that requires sec. 16(b) to be interpreted to exclude felony DWI from the definition of crime of violence. Notwithstanding the BIA's finding in Puente, Interim Decision 3412, 1999 WL 770709 (BIA 1999), that an approach that attempts to determine the meaning of each individual phrase takes the words "may be used" out of context, we hold that the language of sec. 16(b) simply does not support a finding that a risk that one object will apply force to another is enough to constitute a crime of violence

under the statute. Although we agree with the BIA that the nature of the crime is the "core concept of sec. 16(b)," the words "by its nature" do not change the meaning of the words "may be used in the course of committing the offense." Id. Therefore, we agree with the Fifth Circuit that sec. 16(b) only applies "when the nature of an offense is such that there is a substantial likelihood that the perpetrator will intentionally employ physical force against another's person or property in the commission thereof." Chapa Garza, 243 F.3d at 925.

The government argues that, even if we determine that the language of the second prong suggests that intent is required, we should decline to make such a finding because such an interpretation would make the second prong of sec. 16 redundant. We disagree with the government's contention that any interpretation of sec. 16(b) that includes a mental state requirement will necessarily make the two prongs redundant. For example, criminal confinement by fraud or enticement might constitute a crime of violence under sec. 16(b). In addition, several state burglary offenses that do not fall within the definition of burglary in 8 U.S.C. sec. 1101(a)(43)(G) might not have the intentional use of physical force as an element but by their nature have a substantial risk that intentional force may be used in the course of committing the offense. Therefore, we are not persuaded that our decision today will render sec. 16(b) meaningless.

Having found that sec. 16(b) is limited to crimes in which the offender is reckless with respect to the risk that intentional physical force will be used in the course of committing the offense, we turn our attention to the ultimate question of whether petitioners' prior convictions qualify as crimes of violence under this interpretation. As we noted above, we apply a categorical approach in order to determine whether a conviction under a specific statute is a crime of violence. We look only to the generic elements of the statute, and determine if those elements, by their nature, give rise to a substantial risk that intentional physical force will be used in the course of perpetrating the offense. Because "[i]ntentional force . . . is virtually never employed to commit"

any of the offenses for which petitioners were convicted, Chapa-Garza v. INS, 243 F.3d at 927, we find that petitioners convictions are not crimes of violence under sec. 16(b).

III. Conclusion

Our decision today does not minimize the seriousness of crimes involving drunk driving. There is no question that drunk driving "exacts a high societal toll in the forms of death, injury and property damage." Magallanes, Interim Decision 3341, 1998 133301 (BIA 1998). This fact does not, however, change our observation in Rutherford, that "a drunk driving accident is not the result of plan, direction, or purpose, but of recklessness at worst and misfortune at best." 54 F.3d at 372. Based on the foregoing reasons, we VACATE the deportation order of petitioners Bazan-Reyes, Maciasowicz, and Gomez-Vela, and REMAND for proceedings consistent with this opinion.

FOOTNOTES

/1 The relevant provisions of section 9-30-5-3 provide:

A person commits a Class D felony if:

(1) the person has a previous conviction of operating while intoxicated; and

(2) the previous conviction of operating while intoxicated occurred within the five (5) years immediately preceding the occurrence of the violation of section 1 or 2 of this chapter.

Ind. Code sec. 9-30-5-3 (1998).

Section 1 provides:

(a) A person who operates a vehicle with at least ten-hundreths percent (0.10%) of alcohol by weight in grams in:

(1) one hundred (100) milliliters of the person's blood; or

(2) two hundred ten (210) liters of the person's breath; commits a Class C felony

Ind. Code sec. 9-30-5-1 (1998).

/2 Section 940.09 provides in part:

Homicide by intoxicated use of vehicle or firearm

(1) Any person who does any of the following is guilty of a Class C felony:

(a) Causes the death of another by the operation or handling of a vehicle while under the influence of an intoxicant

(b) Causes the death of another by the operation of a vehicle while the person has a prohibited alcohol concentration, as defined in sec. 340.01(46m).

Wis. Stat. sec. 940.09 (1996).

/3 At the time of the offense, the statute provided:

(d)(1) Every person convicted of committing a violation of this Section shall be guilty of aggravated driving under the influence of alcohol or drugs or a combination of both if:

  (A) the person committed a violation of this Section, or a similar provision of a law of another state or a local ordinance when the cause of action is the same as or substantially similar to this Section, for the third subsequent time .
. . .

Ill. Rev. Stat. Ch. 625, sec. 5/511-501(d)(1) (1997).

/4 As explained above, Bazan-Reyes and Gomez-Vela were convicted of DWI and aggravated DUI respectively, while Maciasowicz was convicted of homicide by intoxicated use of a vehicle. Unless otherwise indicated, the term "DWI" is intended to refer to all of the petitioners' convictions.

/5 18 U.S.C. sec. 16 provides:

The term "crime of violence" means

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

/6 In Rutherford, the petitioner was convicted of assault in the first degree for violating section 13A-6-20(a)(5) of the Alabama Code which provides that a person is guilty of the crime of assault

in the first degree if "[w]hile driving under the influence of alcohol . . . he causes serious bodily injury to the person of another with a motor vehicle."

/7 Guideline 4B1 has been renumbered so that section 4B1.2(1) is now section 4B1.2(a) and so forth. See U.S. Sentencing Guidelines Manual app. C at 416 (1997).